334 So.2d 70 (1976)
Pauline M. BERTRAM, Appellant,
v.
Richard M. BERTRAM, Appellee.
Nos. 76-173, 76-174.
District Court of Appeal of Florida, Third District.
June 2, 1976.
Miller & Podell, Miami Beach, for appellant.
Fromberg, Fromberg & Roth and Jeffrey Michael Cohen, Miami, for appellee.
Before BARKDULL, C.J., and HAVERFIELD, J., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
The marriage of the appellant Pauline M. Bertram and the appellee Richard H. Bertram was dissolved by a divorce judgment entered in the circuit court of Dade County on April 17, 1970. The custody of the six minor children of the marriage was *71 awarded to the wife, and the husband was ordered to pay to the wife for child support the sum of $2,000.00 per month, (one-sixth thereof being for each child until reaching 21 years of age). The judgment further provided that the husband should pay "all extraordinary medical bills for the said minor children, including psychiatric care as may be necessary".
On December 1, 1975, the wife filed a motion alleging the husband was in default of the provision of the judgment for payment to her of extraordinary medical expenses of the children, by having failed and refused to pay, or reimburse her for payment of $3,764.79 for medical expenses and expenses incidental thereto for treatment of the daughter Anne Elizabeth at a clinic at the Duke University Medical Center. The motion further alleged certain amounts paid and incurred, and to be incurred, for dental surgery and for orthodontial treatment of the daughter Caroline. The motion prayed for suit money for discovery to sustain the foregoing; that the husband be cited for contempt for failure to pay the said expenses relating to Anne Elizabeth; that the husband be ordered to pay the amount necessary for the said past and future treatment of Caroline; and to pay the wife's attorney's fees incident to the proceeding.
The husband filed a motion for modification of the judgment, as to his visitation privileges in certain respects, and, upon alleging that Caroline was living apart from the home maintained by the wife and was self-supporting, seeking to have the child support payments reduced by one-sixth. In response thereto the wife averred continued need for child support for Caroline, based on facts which need not be recited here.
Following a hearing thereon, an order was entered by which the trial court modified the judgment as to visitation rights of the husband in certain respects; denied the husband's motion for reduction of child support; and held the husband should pay for the dental surgery and orthodontial work required for Caroline. The wife's motion for attorney fees was denied. With regard to the medical bills and expenses for the treatment of Anne Elizabeth, the order denied the wife's motion, as follows:
"2. Defendant-husband should not be required to pay the bills in the amount of $3,764.79 incurred on behalf of Anne Bertram for treatment received at the private diagnostic clinic, Medical Division, at Duke University Medical Center, Durham, North Carolina. The court does not consider said expenses to be `extraordinary medical bills' within the intent and meaning of the final judgment of divorce".
The wife filed two interlocutory appeals from said order. Appeal No. 76-173 was directed to the above quoted provision of the order, relating to the medical expenses of Anne Elizabeth. Appeal No. 76-174 was directed to the denial of the wife's application for attorney fees. The appeals were consolidated here.
A principal question involved is whether the trial court was in error in holding that the expenses of Anne Elizabeth for treatment at the clinic at Duke Medical Center were not an obligation of the husband within the intent and meaning of the judgment.
Anne Elizabeth was treated for obesity. The treatment extended over a period of two-and-one-half months. She was excessively overweight. Where she should have weighed around 120 pounds, her weight had increased to 192 pounds. According to medical reports filed in evidence, while her general condition of health was good, the excessive weight could lead to serious illnesses. One of the reports filed in evidence, under the heading of "Present Illness," stated: "Patient was overweight at ages 10 & 11, then she lost some weight dieting, but at ages 16 & 17 she had regained to 155 pounds. In college she gained *72 more quickly reaching a weight of 192 pounds, her present weight. She now wants to take the rice-reduction treatment until she has reached her normal weight."
Following certain preliminary examinations as reflected in medical reports, dated May 22, 1975, a letter was sent by one of the doctors to the husband, as follows:

"Mr. Richard Bertram June 2, 1975
7150 S.W. 100th Street
Miami, Florida 33156
Dear Mr. Bertram:
I am sending you a copy of our examination notes on your daughter, Miss
Anne Elizabeth Bertram.
I am afraid we should not take her condition too lightly. Excess weight
to the degree which she has accumulated is evidence of severely
disturbed biochemical functions and is a source of dangerous trouble,
especially in combination with the tachycardia after mild exercise, the
decreased kidney function and the abnormalities in the blood sugar and
the uric acid metabolism. The family history of heart disease, of
hypertension and of obesity cannot be ignored either.
I, therefore, think intensive dietary treatment should not be delayed so
that the more unpleasant complications may be prevented.
I repeat what we told your daughter  we would be glad to have her
under our care so that the proper rice/reduction diet can be worked out
for her under our supervision and so that further studies can be done.
She should remain here with us without any interruption at least until
the heart, the kidneys and the blood chemistry are under satisfactory
control and the weight (fully dressed) has been stabilized below a level
of 120 pounds.
I know the treatment here is a time-consuming and inconvenient nuisance;
but, as compared with the complications of her diseases, it is certainly
preferable. I have an idea that she would have the will-power and
self-discipline necessary to carry it through in a scientific and
matter-of-fact way until she has reached the final goal and is on safe
grounds, provided she gets all possible help and forceful encouragement
from you. Otherwise, she will continue the usual pattern of losing and
gaining insignificant amounts of weight and nothing really worthwhile
will be accomplished.
 With best wishes, Very sincerely,
 Walter Kempner, M.D.
 Professor Em. of Medicine"

The record does not show any response thereto by Mr. Bertram, nor does it show any objections made by Mr. Bertram to such treatment being undertaken, or any contention advanced by him at that time that the medical expense thereof would not fall within the extraordinary medical expense payment requirement in the judgment.
From the reports, and the doctor's letter to Mr. Bertram, it seems clear that the obese condition of the girl was a condition beyond her control, except for "losing and gaining insignificant amounts of weight" from time to time. It also appears a medical opinion that the girl needed a drastic reduction in weight, to 120 pounds, to avoid the stated complications and damage to *73 organs which a continuance of her obesity could be expected to involve or bring about.
We are impelled to conclude that the trial court was in error in holding the medical treatment for Anne Elizabeth did not involve an extraordinary medical expense, in the circumstances presented.[1]
Anne Elizabeth had an extreme overweight condition, the correction of which appeared to be beyond her control, and the elimination of which by medical treatment was deemed advisable, if not essential, to her health and physical welfare. In that regard it could be compared to a condition in one's body, dangerous to health, which could be eliminated only by a major operation. In an instance such as that example, the necessary corrective operation would be regarded readily as an extraordinary medical expense. The possibility that Anne Elizabeth could have been treated at another place or by another method at less expense, would appear to be immaterial, in view of the fact that the husband was advised before the treatment commenced as to the nature and extent of the proposed treatment and the need therefor, and made no disclaimer with reference thereto, so far as the record shows.
We affirm the order denying attorney fees for the wife. That was a matter within the discretion of the court, under § 61.16 Fla. Stat., F.S.A. In view of the circumstances of the parties, that ruling did not represent an abuse of discretion. We reverse the order to the extent that it held the husband was not obligated to pay the expenses involved in the treatment of Anne Elizabeth at the clinic at Duke University Center; and we remand the cause with direction to enter an order for payment thereof by the husband, by reimbursing the wife for such amount of the said expenses as she may have paid, and by payment of any balance thereof which may not have been paid.
It is so ordered.
BARKDULL, Chief Judge (dissenting).
I respectfully dissent from the majority opinion in this matter. First, I have serious doubt that a weight loss program, which is entered into voluntarily by the daughter, qualified as an extraordinary medical expense. Further, I note that although this condition had existed for a number of years, the mother and the daughter did not see fit to have the child undergo this treatment until immediately prior to her twenty-first birthday, at which time all obligations on the part of the father would have ceased.
NOTES
[1] By so concluding in this case, it is not to be considered or assumed that this court is holding, in the abstract, that treatment of such kind by a person desiring to reduce weight would constitute an extraordinary medical expense, as referred to in a judgment for dissolution of marriage. It would not be so, except in an unordinary instance, as in this case, where the overweight or obesity is great, with material adverse consequences medically predictable if the condition should continue, and when medical treatment is considered necessary in order for the dangerous condition to be corrected.